# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LASANDRA PERKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-16-796-M |
| | ) | |
| M&N DEALERSHIP XII, LLC d/b/a | ) | |
| METRO FORD OF OKC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is defendant M&N Dealerships XII, LLC d/b/a Metro Ford of OKC's ("Metro Ford") Motion to Compel Arbitration and for Evidentiary Hearing and Stay of Proceedings, filed July 27, 2016. On August 17, 2016, plaintiff filed her response, and on August 24, 2016, Metro Ford filed its reply. On January 27, 2017, the Court held an evidentiary hearing in this matter.[1] Based upon the parties' submissions, and the evidence presented at the hearing, the Court makes its determination.

I.  Introduction

This case arises from a used vehicle sale at Metro Ford's dealership. Plaintiff bought a 2013 Toyota Rav4 from Metro Ford on June 19, 2015. As part of the sale, plaintiff executed a Purchase Agreement that contained a Dispute Resolution Clause. The Dispute Resolution Clause provides:

> This Dispute Resolution Clause applies to any controversy, claim or dispute between the Purchaser and the Dealer arising out of, or related, to this sale or transaction, including, but not limited to, any and all issues or disputes arising as a result of this sale or transaction, whether said issues arise prior to, during or subsequent to the sale or

---

[1] The issues addressed at the evidentiary hearing were (1) whether plaintiff was fraudulently induced into signing the arbitration agreement, and (2) whether the fee-shifting provisions would be unconscionable under the facts of this case.

> attempted sale of a vehicle and whether said sale or attempted sale is a cash sale or is based upon financing or extended credit, or arises as a result of any financing contract, agreement or sales document related to the sale or attempted sale of a vehicle. The Purchaser and Dealer agree that all matters addressed within this Clause shall be submitted to binding arbitration, with an Arbitration Service or Arbitrator of the parties' choosing, pursuant to the Federal Arbitration Act, Title 9 U.S.C. § 1, et seq. The parties agree and understand that all disputes arising under case law, statutory law, and all other laws, including but not limited to, all contract, tort and property disputes, including any claim regarding the use, misuse, and/or disclosure of any information or documentation, including, but not limited to, personal or financial information obtained by the Dealer from the Purchaser, or about the Purchaser, which may arise from the sale relationship or otherwise during the sale, or at any time in the future, will be subject to binding arbitration in accord with this Contract. The parties specifically exclude from this Dispute Resolution Clause all claims or disputes subject to the Small Claims Procedures Act of the State of Oklahoma. The parties agree that the arbitrator shall have authority provided for by the law and contract, including but not limited to authority to grant an award or order for money damages, consequential damages, exemplary damages, declaratory relief, or injunctive relief. Arbitration shall be conducted in compliance with the Rules of an Arbitration Service or Arbitrator of the parties' choosing and in conformity with the Federal Rules of Civil Procedure. Any evidence submitted shall be in conformity with the Federal Rules of Evidence. The Arbitrator's award(s) will be entered as a judgment in a court having jurisdiction over the parties. Both the Purchaser and Dealer acknowledge and understand that they are waiving their right to a jury trial by entering into this agreement and acknowledge that there shall be no right or authority for any claims to be arbitrated on a class action basis. It is agreed that the party filing the arbitration claim shall be responsible for the filing fee. The arbitrator's fee shall be equally divided between the parties. The prevailing party shall be entitled to attorney fees and costs as allowed by Oklahoma and/or Federal statutes. Dealer and Purchaser agree that if Dealer must hire legal counsel to enforce or defend Dealer's legal rights under this Dispute Resolution Clause, Purchaser will pay to Dealer its attorney fees and costs incurred by Dealer in Dealer's successful defense of Dealer's rights hereunder.

Purchase Agreement, attached as Exhibit 1 to Defendant's Motion to Compel Arbitration and for Evidentiary Hearing and Stay of Proceedings. Additionally, as part of the sale, plaintiff executed

a Retail Installment Sales Contract ("RISC"), which Metro Ford later assigned to Consumer Portfolio Services ("CPS").

Plaintiff alleges that two to three months after the sale, Metro Ford demanded that she pay an additional $3000 down payment or return the Rav4. Metro Ford took the Rav4 back, refunded plaintiff the $800 down payment, and gave plaintiff $200 for the trade-in vehicle that had been sold. On June 17, 2016, plaintiff filed the instant action in the District Court of Oklahoma County, State of Oklahoma, asserting the following causes of action: (1) fraud, (2) fraud in the inducement, (3) misrepresentation, (4) violation of the Oklahoma Credit Code, (5) violation of the Truth in Lending Act, (6) conversion, (7) violation of the Oklahoma Consumer Protection Act, (8) defamation of credit, (9) invasion of privacy/false light, and (10) violation of the Equal Credit Opportunity Act. On July 13, 2016, Metro Ford removed this action to this Court. Metro Ford now moves this Court to compel plaintiff to arbitrate her claims in this action pursuant to the Dispute Resolution Clause and to stay proceedings in this case until arbitration is completed.

II.    Discussion

Metro Ford asserts that plaintiff entered into a valid and enforceable agreement to arbitrate all of her claims arising from her purchase of the Rav4. Metro Ford further asserts that the Dispute Resolution Clause appears conspicuously on the front of the Purchase Agreement and was separately signed by plaintiff. Plaintiff, on the other hand, contends that arbitration is not appropriate in this case. Specifically, plaintiff contends: (1) the Purchase Agreement is not the final contract between the parties; the RISC is the only document which contains all of the necessary terms of a credit extension and it does not contain an arbitration clause; (2) Metro Ford's Dealer Agreement with CPS precludes Metro Ford from adding/altering the RISC, even to include an arbitration clause; (3)

3

arbitration will not provide complete relief for plaintiff's claims; (4) Metro Ford rescinded the Dispute Resolution Clause and/or waived its rights to arbitration; (5) Metro Ford's agent fraudulently induced plaintiff into signing the Dispute Resolution Clause; and (6) the Dispute Resolution Clause is unconscionable.

A. Whether the Dispute Resolution Clause is superseded by the RISC

Plaintiff asserts that the Dispute Resolution Clause in the Purchase Agreement is not enforceable because it was superseded by the RISC. Specifically, plaintiff contends that because the financing terms are essential to a financed transaction and their inclusion is mandated by federal law, the terms of the RISC control the transaction upon execution. Plaintiff further contends that the Dispute Resolution Clause cannot be enforced because the RISC contains a merger clause.[2] Metro Ford, however, asserts that since the Purchase Agreement and the RISC were executed as one transaction, they must be construed together.

"It is the general rule that instruments executed at the same time, and for the same purpose, and in the course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together, as if they were as much one in form as they are in substance." *Mid-Continent Life Ins. Co. v. Goforth*, 143 P.2d 154, 157 (Okla. 1943). *See also F.D.I.C. v. Hennessee*, 966 F.2d 534, 537 (10th Cir. 1992) ("Oklahoma adheres to the widely-accepted rule that when several contracts relating to the same matter are made by the parties as parts of one transaction, all of the instruments should be construed together." ). In the case at bar, Metro Ford and plaintiff

---

[2]The RISC provides: "This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it." Retail Installment Sale Contract, attached as Exhibit 2 to Plaintiff's Response and Objection to Defendant's Motion to Compel Arbitration and for Evidentiary Hearing and Stay of Proceedings.

executed both the Purchase Agreement and the RISC at the same time as part of one transaction – plaintiff's purchase of the Rav4.[3] The Purchase Agreement contained the terms of the sale, including the Dispute Resolution Clause, and the RISC contained the credit terms. Further, the Dispute Resolution Clause specifically notes that it applies "whether said sale or attempted sale is a cash sale or is based upon financing or extended credit, or arises as a result of any financing contract, agreement or sales document related to the sale or attempted sale of a vehicle." Additionally, the Court finds that the terms of the Purchase Agreement, including the Dispute Resolution Clause, and the terms of the RISC do not conflict with one another. Accordingly, the Court finds that the Purchase Agreement and the RISC should be construed together and that the Dispute Resolution Clause is not superseded by the RISC.[4]

B.   Whether Metro Ford's Dealer Agreement with CPS precludes arbitration

Plaintiff asserts that the RISC incorporates the CPS Dealer Agreement and that the CPS Dealer Agreement precludes inclusion of arbitration. Specifically, plaintiff contends that under the terms of the CPS Dealer Agreement, Metro Ford cannot alter or add additional terms from those in the RISC. Metro Ford, on the other hand, asserts that the CPS Dealer Agreement does not preclude arbitration. Having carefully reviewed the parties' submissions, and particularly the CPS Dealer Agreement, the Court finds that the CPS Dealer Agreement does not preclude arbitration. The CPS Dealer Agreement does not expressly preclude arbitration and does not preclude arbitration by

---

[3]In fact, plaintiff and Metro Ford executed a number of documents as part of the purchase of the Rav4.

[4]Because the Court has found that the Purchase Agreement and the RISC should be construed together and, in the eye of the law, are one transaction, the Court finds that it need not address whether the Dispute Resolution Clause was incorporated by reference into the RISC.

5

implication. Further, the Court finds the Dispute Resolution Clause in the Purchase Agreement does not contradict any terms of the RISC.

      C.      <u>Whether arbitration will provide complete relief for plaintiff's claims</u>

Plaintiff asserts that arbitration will not provide complete relief for her claims. The extent and limits of an arbitrator's power is derived from the parties' arbitration agreement. *See Sooner Builders & Invs., Inc. v. Nolan Hatcher Constr. Servs., L.L.C.*, 164 P.3d 1063, 1071 (Okla. 2007). The Dispute Resolution Clause provides that "the arbitrator shall have authority provided for by the law and contract, including but not limited to authority to grant an award or order for money damages, consequential damages, exemplary damages, declaratory relief, or injunctive relief." Based upon the language of the Dispute Resolution Clause, the Court finds that the arbitrator in this case will have the authority to adjudicate any claim asserted under existing law and would be able to award all categories of damages that would be available to plaintiff in this Court. Accordingly, the Court finds that arbitration will provide complete relief for plaintiff's claims.

      D.      <u>Whether Metro Ford rescinded the RISC and waived its right to arbitration</u>

Plaintiff asserts that Metro Ford waived any right it had to arbitration when it elected to rescind the RISC. Rescission is a remedy available in certain breach of contract actions and is awarded by a court. Upon review of plaintiff's response, the Court finds plaintiff's assertion is more in the nature of a breach of contract allegation against Metro Ford. Further, having reviewed all of the parties' submissions, the Court finds that Metro Ford has not waived its right to arbitration.

      E.      <u>Whether Metro Ford's agent fraudulently induced plaintiff into signing the Dispute Resolution Clause</u>

Plaintiff asserts that she was fraudulently induced into signing the Dispute Resolution Clause. Specifically, plaintiff asserts that because Metro Ford's finance manager told her the

Purchase Agreement was mainly for the purpose of verifying her information, such as name and address, the vehicle that was being purchased and traded in, and the price of the vehicle, and did not mention the Dispute Resolution Clause at all, she was fraudulently induced into signing the Dispute Resolution Clause. Metro Ford contends the Dispute Resolution Clause, which appears conspicuously on the front of the Purchase Agreement in red ink, was fully disclosed to plaintiff.

"[S]ilence as to a material fact is not necessarily, as a matter of law, equivalent to a false representation; there must have been an obligation to speak." *Silk v. Phillips Petroleum Co.*, 760 P.2d 174, 179 (Okla. 1988).

> A duty to speak may arise from partial disclosure, the speaker being under a duty to say nothing or to tell the whole truth. One conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud, even though his statement is true as far as it goes, since such concealment is in effect a false representation that what is disclosed is the whole truth.

*Key Fin., Inc. v. Koon*, 371 P.3d 1133, 1138 (Okla. Civ. App. 2015) (quoting *Deardorf v. Rosenbusch*, 206 P.2d 996, 998 (Okla. 1949)). Further,

> [i]n determining whether there is a duty to speak, consideration must be given to the situation of the parties and the matters with which they are dealing. If on account of peculiar circumstances there is a positive duty on the part of one of the parties to a contract to speak, and he remains silent to his benefit and to the detriment of the other party, the failure to speak constitutes fraud.

*Silk*, 760 P.2d at 179 (internal citations omitted).

Having reviewed the parties' submissions, and having heard the evidence presented at the hearing, the Court finds that plaintiff has not met her burden of showing that she was fraudulently induced into signing the Dispute Resolution Clause. Specifically, the Court finds that the Dispute Resolution Clause was clearly visible to plaintiff and that while she did not read the clause, plaintiff

did see the clause. Further, the Court finds that Metro Ford's finance manager did not make any specific statements regarding the Dispute Resolution Clause. Additionally, the Court finds that while the finance manager stated what the main purpose of the Purchase Agreement was, those statements were accurate and, under the circumstances, did not give rise to any duty to speak regarding the Dispute Resolution Clause. Accordingly, the Court finds that Metro Ford's finance manager did not fraudulently induce plaintiff into signing the Dispute Resolution Clause.

  F. Whether the Dispute Resolution Clause is unconscionable

Plaintiff first asserts that the Dispute Resolution Clause is unconscionable based upon its fee-shifting provisions. The Dispute Resolution Clause, however, provides: "[t]he prevailing party shall be entitled to attorney fees and costs as allowed by Oklahoma and/or Federal statutes." Thus, plaintiff would have the same liability for paying attorney fees if she lost her claims as she would in this Court. The Court, therefore, finds that the Dispute Resolution Clause is not unconscionable on this basis.

Plaintiff next asserts that the Dispute Resolution Clause is unconscionable based upon its provision that the arbitrator's fee shall be equally divided between the parties. Specifically, plaintiff asserts that she is a single mom on a limited income and there is no way she could afford such costs should Metro Ford's motion be sustained. "[W]here . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp. - Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

Having carefully reviewed the parties' submissions, and having heard the evidence presented at the hearing, the Court finds that plaintiff has not met her burden of showing the likelihood that

arbitration would be cost-prohibitive in this case. Plaintiff has not presented any evidence of what actual costs she would incur in this case; plaintiff simply presents the costs of arbitration in other cases, without any showing as to the similarities between those cases and the instant case and without any showing that the same arbitrators or arbitration service would be used in this case. Further, Metro Ford has agreed to using an arbitration service such as American Arbitration Association, which would cap plaintiff's arbitration costs at the $200 filing fee. The Court, therefore, finds that the Dispute Resolution Clause is not unconscionable on this basis.

III.　Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS Metro Ford's Motion to Compel Arbitration and for Evidentiary Hearing and Stay of Proceedings [docket no. 4], COMPELS arbitration of plaintiff's claims, and STAYS further proceedings as to plaintiff's claims pending arbitration.

**IT IS SO ORDERED this 13th day of February, 2017.**

*/s/ Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE